Good morning, Your Honors, and may it please the Court, my name is Robert Gombiner and I represent Thomas Hazelrigg, and I would like to reserve two minutes for rebuttal. Whether Tom Hazelrigg liked to eat caviar or whether he had a beautiful view from the penthouse he lived in had nothing to do with whether he willfully failed to pay taxes, but it had everything to do with appealing to class prejudice and inciting envy and resulting in an unfair trial. What happened in this case was that Mr. Hazelrigg was subjected by the government to a continual parade of inflammatory evidence, especially photographs and the government eliciting testimony about how many times he sent his quote-unquote butler to the Seattle Caviar Company and things of that nature. And the problem is if you look at the cases, and these go all the way back to the United States Supreme Court in Siconioil, the courts, including this court in particular, had unanimously condemned the idea that the government should appeal to class prejudice and Siconioil dealt with appeals in the government's argument, in the closing argument. Here what objections did, here you're talking about evidence matters. With the exception of the one house, what objection did you make to any of the other evidence that you're now appealing about? Well, for instance, as a mayoral record, I was not trial counsel. Oh, not you, but trial counsel. But trial counsel did object to the government's effort to introduce a picture, an opening statement of Mr. Hazelrigg in the middle. And it was successful. And he was successful in that. He did object to the one series of photographs regarding the penthouse. That was unsuccessful. And that's all, though, isn't that the only thing you objected to? That is correct. So much of... The plain error is the test for everything else you're raising. Your Honor, that's true, of course, because there weren't objections. But I would submit that this passes the plain error test. And the reason is because first, there's an error. Second, the error is plain. What's plain? What's plain is that if you look at those pictures that were being introduced, and you look at the testimony that was elicited, not in response to any defense raised by Mr. Hazelrigg, but on the government's case in chief. If you look at that evidence, it is clear that there was only one purpose behind the case. And that is to, instead of having the jury focus on what was actually a very close case as to whether Mr. Hazelrigg was deliberately or willfully attempting to evade payment of taxes, instead what you've got is you've got naked appeals to class prejudice. That's a plain error because this court's precedents very, very strongly condemn that kind of conduct. Well, wait a minute. Let's back up just a little bit. So, wasn't the problem here that he was using his, these nominee accounts and placing property in the names of other individuals and whatnot? Well, that, that, no, that wasn't really, the problem was... That's not, that's... No, the, the... Well, then let's go back even further. So what did the government have to prove here? What the government had to prove was that there was a, Mr. Hazelrigg in the years 19, I believe it was 1991 to 1994, owed some taxes. There was a settlement, which he signed, and then he didn't pay the taxes. So what the government had to prove was that he had willfully failed to pay those taxes. They had to show that he had the money. Well, there was no... Or income, or some. He had to have the resources to pay those taxes. Exactly. And the government, and I, we did not object to any of that proof, but in fact, there was, it was absolutely uncontested that Mr. Hazelrigg had far more than enough money. Did he have his money in bank accounts? He had money in bank accounts. They weren't in... In his own name? No. But, but, but, Your Honor, the point is not that the government... So what was the government supposed to do? Well, the government was, it was easy for what the government was supposed to do. All the government needed to do was to prove that Mr. Hazelrigg had money. He didn't pay, he didn't pay the taxes. Right, but if he didn't have it in bank accounts in his own name, then they were going to have to figure out where he did have his money. And part of his money was in real estate that was in the name of his children, business partners, and others. And, Your Honor, that is, we're not contesting that the government could prove that. What I'm arguing is it was the way the government proved it. It was one thing to show that Mr. Hazelrigg had a penthouse that was in his, one of his children's names or in some trust name or something like that. That's fine. The problem is when instead of focusing on that, that's a legitimate argument. Instead, when you start showing pictures of the beautiful sunset and the well-stocked bar and the big screen TV, that doesn't have anything to do with whether he's deliberately evading his taxes. If Mr. Hazelrigg had his money in the same accounts and he had spent all that money on giving it to the little children of the poor. Let's suppose that we thought it was error and let's, for the sake of argument, let's assume that it's plain. Yes. So let's get to the third prong. Okay. Then the third prong is does it affect the integrity of the courts and does it undermine confidence in the outcome? And the answer to those is both yes. I would point out that this court has. How does it affect the integrity of the outcome? Because what it does is it creates, the government is then creating a situation in which someone is being tried, not for what they did but for who they are. For example, if. Right, but there was lots of evidence as to what he did. There was lots of evidence to what he did, but there was also lots of evidence on the other side. It wasn't a slam-dunk case by any means. I mean, Mr. Hazelrigg presented evidence from a very well-respected tax attorney who had represented him and through his own testimony that the money that the government claimed he owned was, he would go in this partnership in conjunction with a person named Mr. Mastro. Mr. Mastro contested the assessment. Mr. Mastro won. That's what Mr. Hazelrigg testified to. So he, there was a perfectly good argument that he thought that he didn't owe that money. Right. It wouldn't have been a problem if he had just maintained a bank account in his own name and maintained the properties in his own name. Instead, he started moving things around like a shell game. Well, he had an explanation. Whether it was a shell game or not, I would disagree with that possibly. But, yes, he did put money in other accounts, and he had an explanation for that. Mr. Hazelrigg was a businessman. He did a long series of various ventures. He testified that the reason the money was in nominee accounts was not to evade the taxes from the government. It was to try to shield himself from other creditors. From creditors. Right. Which would include the IRS. Well, he testified that it wasn't the IRS that was the reason he was doing it. It was the other creditors. Your Honor, we're not arguing that this is a case where there's no substantial evidence. I'm sorry? I don't think the testimony of his people, it wasn't him particularly, but it wasn't the testimony of his witnesses that the IRS wasn't involved. I think that at least one piece of testimony, I recall, says that it wasn't the major factor, but that implies that it was a factor. Well, there's various ways to interpret the testimony, but a number of people testified that Mr. Hazelrigg specifically told them that he did not believe he owed that money because Mr. Mastro had won his case, therefore he believed that he didn't owe the money either because he was an equal partner in the venture. As I say, we're not arguing that there's no substantial evidence. The argument here is that the government introduced a lot of extremely prejudicial testimony that skewed the case and tipped the balance. And that's a very different argument from saying that the government is precluded from proving its case. It's just precluded from proving it by illegitimate means. Did you want to save? Well, I'm down to 30 seconds. I'll give you another minute. Okay, I'll subside then. Thank you very much. Thank you. Good morning. May it please the Court. Brian Warner on behalf of the United States. Evidence of a defendant's personal spending is relevant in a tax prosecution to prove motive, wealth not reported on tax returns, to rebut defenses, and a key point that was missed by counsel, it's relevant to prove affirmative acts of evasion. That's one of the elements that the government has to prove in any tax case, is that a defendant took affirmative steps to evade his tax obligation, and he did so willfully. Financial transactions like that are the essence of a tax prosecution like that, and that's what the government did here. The government selected a series of financial transactions, a series of personal spending, to show that Mr. Hazelrigg was spending his money from nominee accounts, that is bank accounts that weren't in his name, that didn't have his Social Security number on them, and therefore the IRS couldn't levy those accounts. He was buying properties in other people's names, so again, it was not tied to him, therefore the IRS lien that had been filed in King County could not attach to him. He did so to hide from the IRS, and the government introduced a series of financial transactions, a series of spending checks, and then photographs of the items that were purchased. The government introduced a lot of evidence prior to mid-2007 to show how Mr. Hazelrigg conducted his financial transactions, and then after mid-2007 they showed that he completely changed the way he conducted his financial transactions. Then after mid-2007, and let me stop, the key to the mid-2007 date is that that's the time when the IRS tax collection expires. So he was no longer subject to the IRS lien. He was no longer a chance that the IRS would levy a bank account, so he opened up a bank account in his own name. He then purchased property in his own name. He then listed, attempted to get loans from banks in his own name. So when was it necessary to use the photographs to point? The photographs were. . . You were able to show the expenditures and the purchases and whatnot? The photographs were to make sure. . . There were multiple property. . . I'll take the properties, for example. There were multiple properties in this case, and multiple witnesses talked about each property. The photographs simply helped the jury not get confused between the three properties. They helped the jury understand what it was the particular properties looked like or the art looked like, and it helped avoid jury confusion. The jury also knew beforehand that this was a $3 million penthouse, so, again, it showed them what it looked like. And, again, I think when telling a jury about a chandelier that cost $200,000, I think it was important to show them this is what the picture, this is what the chandelier looks like. Would you give for $200,000? Well, it's important. It helps explain. . . It gives a visual to the testimony. That's why the government. . . That's why trial lawyers, I think, use photographs at all. It sort of helps the jury remember. Then many days later when they're trying to remember, what were those affirmative acts of evasion? What was that property that he bought? What was that purchase that he bought? What were those expenditures? Oh, I recall it was the chandelier. It was the TV, or it was this property in Bellevue. So there were no objections except at the outset, right? Is that right? There was a relevancy objection to the photographs of the Bellevue penthouse. That's the only objection during the trial. There was an objection that was sustained to a particular exhibit and opening. Right. So, again, everything else would be under a plain error review. The counsel cannot show that the. . . Well, again, I do not believe it's. . . I won't go any further than plain error. There's a reason, I think, that the court didn't. . . or the trial counsel didn't make objections to these pictures, to these acts of spending. It's because it was very clearly relevant. Again, the bread and butter of a tax evasion case is to show how the defendant conducted his finances during the period in which he owed the IRS a substantial sum. If there are no further questions. . . Well, I would just like to ask the court to, in response to what the government said, to please subject that to a common sense analysis. If the government's argument were correct, then why would it be that the government would ask the butler, did Mr. Hazelrig buy caviar, instead of asking the butler, did Mr. Hazelrig ask you to buy loaves of bread? Why, if the government was interested in, quote-unquote, helping the jury distinguish between residences, why wouldn't it be satisfied with this picture of the penthouse, rather than, for example, this picture of the penthouse with the beautiful view? Are you really getting into very fine nuances, which were never presented to the district court because there weren't specific fair objections made except for that one case of the house? I don't think they're fine nuances. I think that if you look at the amount of very prejudicial evidence regarding spending that had nothing to do with motive and had nothing to do with any of the issues in the case, but had a lot to do with making the jury think that Mr. Hazelrig is a really rich guy who goes around buying $200,000 chandeliers instead of paying his taxes, that is extremely prejudicial, and that's exactly what all the cases I cited in my brief say. This is not some bizarre or far-out notion. This is something that many courts have condemned repeatedly. In a tax evasion case, counsel, would it ever be appropriate for the government to point out the multiplier effect of the taxes versus the income that somebody had? If somebody owes $10,000 and only has income of $30,000, that would seem to be relevant to suggest this was not willful. But if somebody has $100 million and only owes $10,000, the gross disparity there is such a multiplier. That's certainly true. But what's not true is that the government should be able to say what the person was spending his money on, because that has nothing to do with anything. It doesn't matter whether you spend it on charity or whether you spend it on horse races or anything else. That's just not the issue in the case. Okay. And that's what the cases say. Thank you. I gave you an extra minute. Thank you very much, counsel. The matter is submitted at this time.
judges: Ebel, Paez, Bybee